## THE PETERSBURG.

### WEYANT v. THE PETERSBURG.

(District Court, E. D. Virginia. May 15, 1895.)

SHIPPING—LIABILITY OF VESSEL FOR TORT—ARREST OF VESSEL WITHOUT PRO-
CESS.

A vessel employed and used, with malicious intent, for the purpose of ar-
resting, without process, another vessel, and bringing her forcibly into
port, is responsible for the act, and a participant, whether wittingly or
not, in the malice which incited it, and she is therefore liable to the owner
of the vessel so arrested for the damages and expenses occasioned thereby.

This was a libel by Charles Weyant against the steam tug Peters-
burg to recover damages for the alleged unlawful arrest of the
schooner Coral by the aid of the said tug.

J. W. Mallet and Whitehurst & Hughes, for libelant.
Sharp & Hughes, for respondent.

HUGHES, District Judge. Charles Weyant is the owner of the
schooner Coral, of New London, Conn. The schooner had been
engaged in conveying bricks from near Smithfield, Va., on the
James river, to Norfolk, for several months, with Daniel Weyant,
father of Charles Weyant, as master, when, on the 8th of March
last, Charles Weyant came to Norfolk from New London, and,
producing proper evidence, registered her in the customhouse at
Norfolk as owned by himself, and took out the usual papers for the
Coral, showing his ownership. He exhibited these papers to Daniel
Weyant, who had been master, and who surrendered to him the pos-
session of the schooner. He took a young man named Benjamin
Burrows on board with him, and made him master of the schooner.
Charles Weyant and Benjamin Burrows were young men. On the
afternoon of the 8th of March they left Norfolk, under sail, and pro-
ceeded down Elizabeth river, on what they say was a return voyage
of the schooner to New London, intending to go by way of the
Chesapeake Bay and the canals, to New York. They anchored on the
evening of the 8th between Lambert's Point and Craney Island, close
in to the southern shore, behind the vessels usually anchored in those
waters. The night was dark and rainy. They had up no anchor
light, but were out of the channel; the Coral being of light draft,
of only 34 tons, and 54 feet length. It seems from the evidence that
the Coral had on board, down below decks, some half-dozen wheel-
barrows, which she had brought from the brick yard to be repaired
in Norfolk, but which had not been put off when Daniel Weyant re-
linquished the schooner to Charles Weyant. It cannot be pretended
that the two young men had any design, in leaving port with the
schooner, to purloin these barrows. It is not certain that they
knew the barrows were on board. After nightfall of the 8th, Daniel
Weyant applied to the master of the tug Petersburg, the respondent
in this case, to go in pursuit of the Coral; alleging that she had been

stolen, and that the thieves were making away with her, down towards Hampton Roads and the bay. The master of the tug, Alexander, agreed to go at once in pursuit with Daniel Weyant, and some three or four other men were taken on board to give help in the enterprise. In the search thus begun the tug and its party passed considerably beyond the Craney Island light, into the waters of the roads and bay below. But, not finding the schooner, they finally turned upon their course, and came back into Elizabeth river, where they found the Coral, anchored as has been described, about half past 1 o'clock. The answer of the respondent says, among other things, that the tug went alongside the schooner, and Daniel Weyant and S. F. Walker went aboard of her, and fastened lines of the tug to her; that the parties on the schooner engaged in a conversation, rather disagreeable in character, with Daniel Weyant; that when the tug had proceeded about a quarter of a mile towards Norfolk, with the schooner in tow, one of the men on board came forward, and asked the master, Alexander, by what authority he was bringing the vessel back, saying that he was master, but on that occasion showing no papers, and making no claim of ownership. But this allegation as to ownership is denied, and, I think, was unfounded in fact. The tug brought the schooner up to Norfolk, took her to Roanoke dock, docked her there, and left her. The two men who had been on board left the schooner as soon as she was docked, and the tug left the schooner in the possession of Daniel Weyant, who had employed her to go after the Coral and bring her into port. Early on the morning of the 9th of March, Hudgins & Hurst, sailmakers of Norfolk, filed a libel for sails, most of which had not been furnished, against the schooner; and the respondent, a few minutes afterwards, filed a petition in the form of a libel for searching for her, and bringing her into port as described. The circumstances tend strongly to show that the libel of Hudgins & Hurst had been preconcerted on the 8th between them and Daniel Weyant.

On the hearing of the libel of Hudgins & Hurst and the petition of the respondent, just mentioned, when the cause matured for trial I refused to entertain either, on the ground that the schooner had been unlawfully arrested and brought into port. This action was based on the evidence of Daniel Weyant himself. My decree dismissing the cases was made on the 27th of March. In consequence of the libel and petition just mentioned, the schooner had been detained in this port from the 9th to the 27th of March, or 18 days. The libel claims damages for the detention. There is no doubt of the jurisdiction of the court to entertain this libel. There is no doubt that, when a tort is committed upon a vessel by persons using another vessel for the purpose, this vessel and its owners may be libeled for the tort. In the case at bar, Daniel Weyant willfully and maliciously committed a tort upon the schooner Coral, by arresting her and bringing her forcibly into port. In committing this tort, he made use of the tug Petersburg, and she became responsible for the act, and a participant, whether wittingly or not, in the malice which

incited it. It is not permissible or tolerable to allow vessels to be pursued and arrested without authority or process of law. If it were countenanced, such a practice would speedily run into the most gross abuses. Nor is it allowable, when the foremost agent in such a proceeding is actuated by passion and malice, to hold those whom he uses and employs to commit the wrongful and malicious act to plead innocence of malicious motive on their part. It is the duty of those who lend themselves to the evil actions of tort feasors to make themselves acquainted with the character of the work which they engage in. No master of a vessel has a right to arrest another vessel without express legal authority, and thus to take her in charge and in tow, without first calling for and examining her ship's papers. When he is acting without process, it is his duty to call for these papers, and make himself acquainted with the true ownership of the vessel, before venturing to take her in charge. If the Coral had been at anchor, without any one on board, on the occasion of her seizure, the act of taking hold of her and towing her away without a warrant of arrest, and without inquiry as to the true ownership, would have been tortious. Ignorance of ownership cannot justify a tortious act of the sort, nor can innocence of evil motive exonerate the tort-feasing vessel, if she is acting as the immediate agent of a willful and malicious tort feasor. In the interest of public policy, I must hold the tug Petersburg responsible for the acts and the motives of her employer, Daniel Weyant, in this matter, and decree accordingly. I will assess the damages for delay of the Coral in port here, and for the expenses incident to it and in this litigation, at $250. Punitive damages are not embraced in this award.